Filed 11/24/20  In re Melody I. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION EIGHT

| | |
|---|---|
| In re Melody I., a Person Coming Under the Juvenile Court Law. | B305843 |
| _____  LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,  Plaintiff and Respondent,  v.  MONIQUE I.,  Defendant and Appellant. | (Los Angeles County Super. Ct. No. 18CCJP03647C) |

APPEAL from orders of the Superior Court of Los Angeles County, Jana Seng, Judge.  Affirmed.

Deborah Dentler, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Jane Kwon, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

We affirm the juvenile court's order finding a child adoptable and terminating a mother's parental rights. All unspecified statutory references are to the Welfare and Institutions Code.

## I

Monique I. and Sergio L. had a daughter, Melody I., born in March of 2018. The mother has four other children who are not directly involved in this appeal.

The mother was inconsistent in her efforts to obtain prenatal care while pregnant with Melody. The mother had a history of using methamphetamine. She first became addicted to drugs when she was 12 years old and had been addicted to drugs for 17 years.

The father used methamphetamine and he was violent with the mother. The mother went to the emergency room while pregnant with Melody because the father hit the mother's face and belly.

In June 2018, the Department filed a petition under section 300 on behalf of two-month-old Melody. The petition alleged Melody was at substantial risk of serious harm due to the mother's drug abuse and the mother's failure to protect Melody from the father, who abused methamphetamine and beat the pregnant mother. Two other allegations were about the mother driving Melody's half siblings while under the influence of marijuana.

The court found section 300 applied to Melody and detained Melody from the mother.

On June 12, 2018, Melody began living with her paternal aunt and uncle and their six children. Melody had known the

family since she was born.  She appeared comfortable in their home and she had started to bond with her cousins.

The aunt and uncle had to meet certain guidelines for Melody to remain in their care.  The uncle had been arrested in October 2002 for driving under the influence of alcohol or drugs.  The Department told the aunt and uncle they would need to get a waiver because of the arrest.

On August 28, 2018, the court held a jurisdiction and disposition hearing.  The court dismissed the allegations related to Melody's half siblings and otherwise sustained an amended section 300 petition.  The court declared Melody a dependent, removed her from the mother's custody, and ordered family reunification services with monitored visitation.

The mother missed 12 drug tests between August 2018 and January 2019.

In October 2018, Melody's maternal grandfather reported the mother broke a window at his home.  The same month, a Department social worker said the mother appeared under the influence of drugs at the Department's office.  The mother decided not to enroll in an inpatient drug program.

In November 2018, the mother said she stopped visiting Melody because she had been using drugs and did not want Melody to see her that way.

In December 2018, the mother broke into the paternal aunt's home.

In January 2019, the mother told a social worker she was over four months pregnant and had not been getting prenatal care.  She tested positive for marijuana twice that month.

In February 2019, the mother entered a drug treatment program but the program discharged her early "due to her

temperament." The mother failed to complete several court-ordered programs.

Melody remained with her aunt and uncle. In March 2019, the Department reported Melody was thriving. The aunt took her to medical appointments. Melody had no medical, emotional, or behavioral issues, but her motor skills lagged. The aunt secured services for Melody to address this situation.

The mother did not call the aunt and uncle to check on Melody, did not attend Melody's medical appointments or therapy sessions, and did not maintain regular visits.

On April 17, 2019, the court terminated the mother's reunification services, ordered permanency placement services for Melody, and set the matter for a section 366.26 selection and implementation hearing.

In June 2019, a court detained the mother's newborn son from her custody because she used methamphetamine during her pregnancy. The mother tested positive for the drug two weeks before he was born.

In August 2019, the Department reported Melody was adoptable and her aunt and uncle wanted to adopt her. The aunt and uncle met Melody's psychological, emotional, and physical needs. Melody continued to receive therapy for her motor skills. The aunt and uncle facilitated Melody's contact with her brother and maternal grandfather.

The mother admitted she and the father used methamphetamine on August 24, 2019 and they got into a fight. The mother punched the father. She threw a bike at the paternal grandmother, who observed the fight. Days later, the mother entered an inpatient treatment program, where she tested positive for methamphetamine and marijuana.

On September 17, 2019, the resource family approval program, which assesses whether families are fit to care for dependent children (see § 16519), denied approval for the aunt and uncle. According to the Department, the approval program had denied the uncle's waiver for his 2002 arrest.

The aunt and uncle said they were committed to providing permanency for Melody and were in the process of appealing the denial. The uncle enrolled in a class to help resolve the arrest issue. A social worker involved in the approval program did not foresee any "further barriers" in the approval process.

In October 2019, the Department reported Melody continued to thrive with her aunt and uncle. Melody had been meeting developmental milestones. She attended weekly physical therapy. She had bonded with her aunt, uncle, and six cousins. Melody saw her half siblings at a barbeque her aunt and uncle hosted in September 2019. She had no medical, mental, or emotional issues.

On October 16, 2019, the juvenile court ordered adoption as Melody's permanent plan.

On December 12, 2019, the mother filed a petition under section 388 requesting the court order Melody to be in her care or in the alternative, to reinstate family reunification services.

The mother offered evidence she completed 82 days at an inpatient drug treatment program; completed parenting, domestic violence, and anger management classes; had several negative drug tests between October 2019 and January 2020; and visited Melody.

In January 2020, the Department submitted an interim review report. Melody continued to thrive and meet developmental milestones. Her language development was good.

She was making progress through her weekly physical therapy. She was well-liked by her six cousins, who were "extremely bonded" to her. She was "very bonded" to her aunt and uncle. In November 2019, the approval program confirmed receipt of the aunt and uncle's appeal and the aunt and uncle were awaiting a resolution hearing date. The uncle completed the class in which he had enrolled.

The court held a section 388 and section 366.26 hearing on February 5, 2020. Melody was 22 months old. The court denied the section 388 petition.

For the section 366.26 portion of the hearing, the mother requested the court make Melody's permanent plan legal guardianship, not adoption. She said the parent-child beneficial relationship exception to adoption applied and terminating her parental rights would not be in Melody's best interests.

Melody's counsel disagreed with the mother and said no exception applied. The mother consistently visited Melody only after she was in a treatment program or sober living home, and only when the Department transported Melody to the mother. Furthermore, the mother visited Melody just once a week. Melody did not see the mother as a parental figure. In contrast, Melody had bonded with the aunt, uncle, and their children. Melody's counsel said adoption would provide Melody with the highest level of permanency. The Department agreed with Melody's counsel.

The court found Melody adoptable and found adoption was in her best interests. The mother maintained regular visits but had not established a bond with Melody nor taken on a parental role. The court found it would be detrimental to return Melody to the mother, no exception to adoption applied, and there were no

legal impediments to adoption.  The court terminated the mother's parental rights.  The court designated the aunt and uncle as Melody's prospective adoptive parents.

The mother timely appealed.

## II

The order finding Melody adoptable was proper.

At a section 366.26 permanency planning hearing, the court determines whether, by clear and convincing evidence, it is likely someone will adopt the child within a reasonable time. (§ 366.26, subd. (c)(1); *In re Zeth S.* (2003) 31 Cal.4th 396, 406.) The shorthand for this inquiry is "adoptable" or "adoptability."  If a child is adoptable, the court must terminate parental rights and order the child placed for adoption.  (§ 366.26, subd. (c)(1).) Absent certain statutory exceptions, the legislature's preferred choice for adoptable children is adoption and termination of parental rights.  (*In re Celine R.* (2003) 31 Cal.4th 45, 53.)

The focus of the adoptability inquiry is the child, not the potential adoptive parents.  (*In re Josue G.* (2003) 106 Cal.App.4th 725, 733 (*Josue*).)  Indeed, the court may find a child adoptable even absent a placement with someone prepared to adopt the child.  (§ 366.26, subd. (c)(1).)

A child may be generally adoptable, meaning the child's individual attributes make it likely someone will adopt the child irrespective of whether there is a prospective adoptive family.  (*In re A.A.* (2008) 167 Cal.App.4th 1292, 1313 (*A.A.*).)

Factors supporting a child's general adoptability include young age, good physical and emotional health, intellectual growth, and ability to develop interpersonal relationships.  (*In re Gregory A.* (2005) 126 Cal.App.4th 1554, 1562.)  A person's interest in adopting the child tends to show someone, either that

7

prospective parent or another parent, will adopt the child. (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649–1650 (*Sarah*).)

A child who is not generally adoptable may be specifically adoptable. If a particular prospective family wishes to adopt a child, the child may be specifically adoptable notwithstanding factors such as the child's older age, poor health, physical disability, or emotional instability. (*Sarah*, *supra*, 22 Cal.App.4th at p. 1650.) In such a circumstance, the court examines whether legal impediments may prevent that family from adopting the child. (*Ibid.*)

The court must make an express finding of adoptability but it need not make an express finding about whether the child is generally or specifically adoptable. (See *A.A.*, *supra*, 167 Cal.App.4th at p. 1313 [no requirement to make express finding of general adoptability].)

We review a juvenile court's finding of adoptability for substantial evidence. (*Josue*, *supra*, 106 Cal.App.4th at p. 732.) We must determine whether the record contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by the clear and convincing standard of proof. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005, 1009.) We do not reweigh evidence. (*Id.* at p. 1008.)

The mother incorrectly contends substantial evidence did not show Melody was likely to be adopted within a reasonable time. On appeal, she raises no arguments about statutory exceptions. We therefore do not analyze exceptions.

Substantial evidence supported the adoptability finding. The evidence showed Melody was generally adoptable. Her young age made adoption more likely. She was thriving. She

had good language development. She had no medical, mental, or emotional issues. While her motor development had lagged, she attended therapy and was progressing. Her close bonds with her aunt, uncle, and six cousins showed she could develop interpersonal relationships. With the aunt and uncle's coordination, she also maintained relationships with her siblings and maternal grandfather. The aunt and uncle's interest in adopting Melody tended to show it was likely someone would adopt her.

The mother incorrectly says there was "no evidence" the aunt and uncle would adopt Melody in a reasonable time because the resource family approval program had not approved them. Evidence showed the aunt and uncle had taken steps to resolve the approval issue. Even absent that evidence, the mother's argument dismisses the possibility Melody was generally adoptable. The Department made this argument in its respondent's brief and the mother decided not to reply. As we explained, substantial evidence showed Melody was generally adoptable.

Contrary to the mother's argument, this case is unlike *In re Jerome D.* (2000) 84 Cal.App.4th 1200. In *Jerome*, the evidence was insufficient to support a finding of general adoptability. (*Id.* at p. 1205.) The child was eight years old, had a close relationship with his mother, with whom he had lived for most of his life, and had a prosthetic eye that needed care and treatment. (*Id.* at pp. 1205, 1207.) Melody does not share these characteristics.

The court properly found Melody adoptable and therefore properly terminated the mother's parental rights.

## DISPOSITION

We affirm.

                                              WILEY, J.

WE CONCUR:


GRIMES, Acting P. J.


STRATTON, J.